UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DALLAS COUNTY, TEXAS,

      Plaintiff,

    v.

ROBERT F. KENNEDY, JR., Secretary of
Health and Human Services, et al.,

      Defendants.

Civil Action No. 25-4242 (CRC)

**DEFENDANTS' COMBINED MOTION TO DISMISS, OPPOSITION TO
PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................. i

Table of Authorities ......................................................................................................... ii

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 2

Legal Standards ................................................................................................................ 4

    I.      Rule 12(b)(1) ........................................................................................... 4

    II.     Rule 12(b)(6) ........................................................................................... 4

    III.    Preliminary Injunctions ......................................................................... 5

Argument .......................................................................................................................... 7

    I.      The Court Lacks Subject-Matter Jurisdiction and Plaintiff's Claims Otherwise
        Fail. ........................................................................................................ 7

        A.     Plaintiff Lacks Standing to Challenge the Termination of a Federal
            Grant Provided to the State of Texas. ........................................ 7

        B.     The Tucker Act Divests this Court of Jurisdiction Over Plaintiff's Claims.
            .................................................................................................. 10

        C.     Plaintiff's Constitutional and Ultra Vires Claims Fail as a Matter of
            Law. ......................................................................................... 19

    II.     Plaintiff Has Not Established Irreparable Harm. .................................. 21

    III.    The Balance of Equities Favors Defendants, and the Public Interest Does Not
        Support the Injunction ........................................................................... 23

    IV.    Any Preliminary Injunction Should Be Stayed ..................................... 24

    V.     The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary
        Relief. .................................................................................................... 24

Conclusion ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*,
840 F. Supp. 2d 327 (D.D.C. 2012) .............................................................................. 22

*Am. Ass'n of Physics Teachers v. Nat'l Sci. Found.*,
---F. Supp. 3d---, 2025 WL 2615054 (D.D.C. Sep. 10, 2025).................................... 13

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ...................................................................................... 4

*Amica Ctr. for Imm. Rts. v. Dep't of Just.*,
Civ. A. No. 25-0298 (RDM), 2025 WL 1852762 (D.D.C. Jun. 6, 2025) ................................ 19

*Aviles-Wynkoop v. Neal*,
978 F. Supp. 2d 15 (D.D.C. 2013) ................................................................................ 22

*Barker v. Conroy*,
921 F.3d 1118 (D.C. Cir. 2019) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 4

*Benisek v. Lamone*,
585 U.S. 155 (2018)......................................................................................................... 6

*Bowen v. Massachusetts*,
487 U.S. 879 (1988).............................................................................................. 16, 17, 18

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .................................................................................... 5, 21

*Cierco v. Mnuchin*,
857 F.3d 407 (D.C. Cir. 2017) ...................................................................................... 10

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) .......................................................................................... 6

*Clevinger v. Advoc. Holdings, Inc.*,
134 F.4th 1230 (D.C. Cir. 2024)..................................................................................... 22

*Cornish v. Dudas*,
540 F. Supp. 2d 61 (D.D.C. 2008) ................................................................................ 22

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022) ................................................................................... 16

*Ctr. for Biological Diversity v. Trump*,
    453 F. Supp. 3d 11 (D.D.C. 2020) ........................................................................ 19, 20

*Dalton v. Specter*,
    511 U.S. 462 (1994) ............................................................................................... 19, 20

*Damus v. Nielsen*, Civ. A.,
    No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ................................... 5

*Davis v. Pension Ben. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) .................................................................................... 5

*Department of Education v. California*,
    604 U.S. 650 (2025) ......................................................................................... passim

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) .................................................................................... 5

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ........................................................................................................ 4

*Farris v. Rice*,
    453 F. Supp. 2d 76 (D.D.C. 2006) ................................................................................ 6

*Freedom Republicans, Inc. v. Fed. Election Comm'n*,
    13 F.3d 412 (D.C. Cir. 1994) ........................................................................................ 7

*Fund for Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1975) .................................................................................... 23

*Global Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) ................................................................................. 20, 21

*Great-West Life & Annuity Insurance Co. v. Knudson*,
    534 U.S. 204 (2002) ....................................................................................... 16, 17, 18

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ...................................................................................................... 9

*Hecate Energy LLC v. FERC*,
    126 F.4th 660 (D.C. Cir. 2025) ........................................................................ 7, 8, 9, 10

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .................................................................................................... 24

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ............................................................................... 4, 11

*Indiana v. Haaland*, Civ. A. No.,
    24-1665 (RBW), 2024 WL 5213401 n.11 (D.D.C. Dec. 24, 2024) ........................................ 23

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ................................................................. 11, 12, 14, 16

*Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*,
    512 F.2d 573 (D.C. Cir. 1975) .................................................................................... 12

*John Doe Co. v. CFPB*,
    849 F.3d 1129 (D.C. Cir. 2017) .................................................................................. 22

*Kim v. FINRA*,
    698 F. Supp. 3d 147 (D.D.C. 2023) ........................................................................... 23

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ................................................................................................... 21

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ......................................................................................... 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 4, 7, 8

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ..................................................................................................... 5

*McKay v. United States*,
    516 F. 3d 848 (10th Cir. 2008) .................................................................................. 12

*Mideast Sys. & China Civ. Const. Saipan Joint Venture, Inc. v. Hodel*,
    792 F.2d 1172 (D.C. Cir. 1986) ................................................................................... 8

*Murthy v. Missouri*,
    603 U.S. 43 (2024) .................................................................................................. 8, 9

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004) ..................................................................................... 8

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................. 5, 23

*Pantoja v. Martinez*,
    No. 21-7118, 2022 WL 893017 (D.C. Cir. 2022) ....................................................... 6

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................... 4

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017) ............................................................................ 11

*Richards v. Delta Air Lines, Inc.*,
    453 F.3d 525 (D.C. Cir. 2006) ............................................................................ 18

*Santos v. Collins*, Civ. A.,
    No. 24-1759 (JDB), 2025 WL 1823471 (D.D.C. Feb. 26, 2025) ..................... 21, 22

*Scottsdale,*
    *Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88 (D.D.C. 2023)..... 6

*Shaffer v. Veneman*,
    325 F.3d 370 (D.C. Cir. 2003) ............................................................................ 11

*Spectrum Five LLC v. FCC*,
    758 F.3d 254 (D.C. Cir. 2014) ............................................................................ 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................... 7

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024)............................................................................................... 6

*Sustainability Inst. v. Trump*, Civ. A.,
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2205)...................................... 13

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005)............................................................................... 4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................... 7

*United States Ass'n of Reptile Keepers, Inc. v. Zinke*,
    852 F.3d 1131 (D.C. Cir. 2017)............................................................................. 6

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
    259 F.2d 921 (D.C. Cir. 1958).............................................................................. 22

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).............................................................................................. 5, 6

Statutes

28 U.S.C. § 1491(a)(1).................................................................................................... 1, 10

Rules

Fed. R. Civ. P. 12(b)(1)................................................................................................ 1, 4, 7
Fed. R. Civ. P. 65(c) .......................................................................................................... 24
Rule 12(b)(6)........................................................................................................................ 4

Regulations

45 C.F.R. § 75.372 ........................................................................................................... 14

Robert F. Kennedy, Jr., Secretary, of the United States Department of Health and Human Services, United States Department of Health and Human Services, Jim O'Neil, Acting Director, Centers for Disease Control and Prevention, and the Centers of Disease Control and Prevention ("Defendants"), by and through undersigned counsel, respectfully move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and requests the Court deny Plaintiff's Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiff, Dallas County, Texas, is the "subrecipient through the State of Texas's Department of State Health Services" of approximately four million in federal funding provided in response to the COVID-19 pandemic.  Compl. (ECF No. 1) ¶ 4.  With the pandemic long past, the Executive reasonably terminated grant programs to the States that were designed to help States navigate the pandemic.

Plaintiff now brings this suit challenging the termination of one COVID-19 era grant on the grounds that such termination violates the separation of powers and spending clause, constitutes *ultra vires* action, exceeds agency authority under the Administrative Procedure Act, and is arbitrary and capricious.  To redress these alleged injures, Plaintiff seeks declaratory and injunctive relief and attorneys' fees.  Yet, while Plaintiff tangentially attack the termination as an overreach of Executive authority, Plaintiff's claims are materially contractual and therefore must be brought in the Court of Federal Claims ("CFC") pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).

Worse still, Plaintiff's claims lack redressability – a core element of Article III standing – because the 'prime recipient' of the terminated grants, the State of Texas, is not a party to this litigation.  Indeed, granting the relief Plaintiff seeks would not redress Plaintiff's alleged harms because such relief would not bind the entity responsible for the distribution of grant funds to

Plaintiff: the State of Texas. And whether the State disburses the funds to Dallas County is entirely speculative. As a result, Plaintiff cannot establish likelihood of success on the merits, and is not entitled to a preliminary injunction. For the same reasons, the Court should dismiss the complaint.

A preliminary injunction is also not proper because Plaintiff does not establish the remaining *Winter* factors. Plaintiff has not shown that irreparable harm will occur because it brings this suit long after the grant was terminated, the funds at issue were used to fund positions Plaintiff specifically designed to outlast the grant, and Plaintiff's fear of reputational harm runs headlong into one of the core claims it now brings against the Defendant. The public interest also weighs decisively against granting the injunction because the grant funds at issue were originally designed to expire within six months and the Defendant has an interest to ensure stewardship over the expenditure of tax payer funds.

## BACKGROUND

This case concerns the termination of Covid-19 era grant awarded to Plaintiff by the State of Texas. *See* Compl. (ECF No. 1) ¶ 6. Plaintiff is a political subdivision of the State of Texas. *Id.* ¶ 18. The Dallas County Commissioners Court ("DCCC") oversees "all county business." *Id.*

On September 15, 2020, Plaintiff accepted an Infection Disease Control Unit Grant ("IDCU Grant") in the amount of $3,981,303.00 through the Texas Department of State Health Services ("Texas DSHS"). *Id.* ¶ 33. Plaintiff uses the IDCU Grant to "conduct infectious disease case intake and investigation, including COVID-19, to mitigate the spread of the virus and protect public health." *Id.* ¶ 38. Through the IDCU Grant, Plaintiff "incurred expenses allowed by the terms and conditions of the grant award and contract with Texas DSHS, submitted invoices each month to Texas DSHS, and received reimbursement." *Id.* ¶ 34. Specifically, Plaintiff uses the IDCU Grant to "fund the work of two permanent employees and one temporary employee." *Id.* ¶ 41.

The initial terms, between Plaintiff and Texas DSHS, set the grant period from September 17, 2020, to April 30, 2022. *Id.* ¶ 37. The award was extended several times. The initial IDCU Grant amount was increased by $6,676,947.00 on November 2, 2021, $160,925.00 on May 16, 2023, $690,500.00 on October 17, 2023, and $4,250,347.00 on September 3, 2024. *Id.* ¶ 35. Ultimately, Plaintiff and Texas DSHS agreed to extend the grant through July 31, 2026.  *Id*. ¶ 37.

On March 25, 2025, Texas DSHS provided notice to Plaintiff that the IDCU Grant was terminated. *Id.* ¶ 52. In the notice, Texas DSHS advised that it was "issuing this notice to pause all activities immediately" due to the termination of grant funding. *Id.*

Plaintiff sued in this Court on December 8, 2025.  *See generally id*. Plaintiff asserts that this termination was unlawful and has caused irreparable harm due to the impact such termination has on Plaintiff's ability to ensure adequate public health safety, in the form of supporting three health-related positions of employment. *Id.* ¶¶ 65-104. Plaintiff alleges that the termination violates the United States Constitution (Counts I and II), is *ultra vires* (Count III), and violates the Administrative Procedure Act ("APA") (Counts IV, V, and VI). *Id.*

To redress these alleged harms, Plaintiff asks this Court to declare the termination unlawful, enjoin the Defendants from terminating the grant, restore funding to the levels the grant possessed at the time of termination, require Defendants to restore the grant to the original terms and conditions set prior to termination, and for attorneys' fees. *Id*. at ¶¶ A-F.

Shortly after filing the Complaint, Plaintiff also moved for a preliminary injunction. PI Mot. (ECF No. 5). Upon the parties' request, the Court established a schedule to govern briefing of a motion to dismiss and the motion for a preliminary injunction. Min. Order (Dec. 18, 2025). Defendants now move to dismiss and oppose Plaintiff's motion for preliminary injunction.

**LEGAL STANDARDS**

**I.      Rule 12(b)(1)**

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**II.     Rule 12(b)(6)**

Under Rule 12(b)(6), the Court must dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. Moreover, pro se complaints must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But the Court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the

- 4 -

language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## III.    Preliminary Injunctions

A preliminary injunction is an "extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted). Such a request involves the exercise of a very far-reaching power that "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted). The movant must demonstrate all of the following factors by "a clear showing": (1) likelihood of success on the merits; (2) irreparable harm absent preliminary emergency relief; (3) the balance of equities between the parties tips in favor of the movant; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (rejecting view that the public interest is "negligible" when juxtaposed against a single person's claim).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). The Supreme Court subsequently reaffirmed its disagreement with the sliding scale approach holding that "a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest.'"  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20).  And where a party "seeks a mandatory injunction—to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet a higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result."  *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006); *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at \*1 (D.C. Cir. 2022) (*per curiam*) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction ... requir[ing] a higher standard than an ordinary preliminary injunction"); *but see League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (rejecting distinction between a mandatory and prohibitory injunction).

If the Court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate. *See United States Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017). Moreover, if the moving party fails to make a sufficient showing of irreparable injury, the Court may deny the request for preliminary injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  Preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."  *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).  "Rather, a court must be persuaded as to all four factors." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023).

## ARGUMENT

### I.    The Court Lacks Subject-Matter Jurisdiction and Plaintiff's Claims Otherwise Fail.

The Court is without jurisdiction to hear Plaintiff's claims, and in any event, fail and should be dismissed.  *See* Fed. R. Civ. P. 12(b)(1), (b)(6).  For the same reasons, Plaintiff is unlikely to succeed on the merits, precluding Plaintiff from obtaining a preliminary injunction.

### A.    Plaintiff Lacks Standing to Challenge the Termination of a Federal Grant Provided to the State of Texas.

Standing presents a jurisdictional issue for Plaintiff.  "The 'irreducible constitutional minimum' of standing has three familiar parts: injury in fact, causation, and redressability," and "[t]he party invoking federal court jurisdiction bears the burden of establishing each of those elements."  *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  A party must have standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  These elements are assessed at the time of the filing of the complaint.  *See Barker v. Conroy*, 921 F.3d 1118, 1125 (D.C. Cir. 2019).  As explained below, there are two critical flaws with Plaintiff's Article III standing First, Plaintiff fails to allege facts sufficient to establish that its claimed harms are fairly traceable to actions of Defendants. Second, its requested relief hinges on speculative future actions by a third party not before this Court.

#### 1.    Plaintiff's Harms are Not Fairly Traceable to Actions of the Defendants.

The second standing prong requires a plaintiff to show "a causal connection between the asserted injury and the challenged conduct, such that the injury is fairly traceable to the challenged conduct and not the result of independent action by a third party not before the court." *Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d 412, 415 (D.C. Cir. 1994) (citing *Lujan*, 504 U.S. at 560)). That causal connection must be clear, as "the mere possibility that causation is

present is not enough; the presence of an independent variable between either the harm and the relief or the harm and the conduct makes causation sufficiently tenuous that standing should be denied." *Mideast Sys. & China Civ. Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1178 (D.C. Cir. 1986). And where a plaintiff seeks to establish injury based on actions of a third party, the plaintiff must offer "substantial evidence of a causal relationship" to remove any doubt of causation and affirm that favorable adjudication would redress the claimed injury. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004), *abrogated on other grounds*, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017).

Here, Plaintiff brings this suit based on alleged actions of the Defendants; however, the Complaint cites numerous instances where Texas DSHS exercises significant control over the disbursement of funds to Plaintiff. Texas DSHS managed the awarding of the grant, the contract's duration, and was the entity responsible for collecting all documents related to expenses incurred by Plaintiff while using the grant. *See* Compl. (ECF No. 1) ¶¶ 34; 35; 37. And while Plaintiff circuitously argues that the termination of the incipient grant to Texas DSHS is the direct cause of its injuries, it acknowledges that termination was effectuated via notice by Texas DSHS. *See* Compl. ¶ 52. Thus, Texas DSHS's termination notice caused Plaintiff's alleged injuries, "a third party not before the court." *Lujan*, 504 U.S. at 561.

### 2.     Plaintiff Fails to Establish Redressability.

Plaintiff cannot satisfy the redressability requirement with respect to its terminated subawards, *vis-a-vis* the State prime recipient, because the State is a third party not before the Court. *Id*. "Redressability examines whether the relief sought will likely alleviate the particularized injury alleged by the plaintiff"—and "[t]he key word is 'likely.'" *Hecate Energy*, 126 F.4th at 665 (citations omitted). "To determine whether an injury is redressable, [courts] consider the relationship between the judicial relief requested and the injury suffered." *Murthy v. Missouri*,

603 U.S. 43, 73 (2024) (citation omitted).   Plaintiff cannot show that CDC's reinstatement of the State's prime award "likely" would result in the State of Texas issuing a subaward that alleviates the Plaintiff's alleged injury.

The State prime recipient (Texas) is not present in this suit, "and there is no reason they should be obliged to honor an incidental legal determination the suit produced." *Murthy*, 603 U.S. at 73-74 (citation omitted).  The Supreme Court recently emphasized:

> [R]edressability requires that the court be able to afford relief *through the exercise of its power,* not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power. . . .   It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.

*Haaland v. Brackeen*, 599 U.S. 255, 293-94 (2023).  In *Haaland*, the Supreme Court considered standing in the context of challenges to a statute, the Indian Child Welfare Act (ICWA), and concluded there was a redressability issue because "[t]he state officials who implement [the challenged statute] are not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced." *Id*. at 293.

"If it is . . . just as plausible that the court's action will not redress the plaintiff's injury as that it will, Article III's redressability requirement is not met." *Hecate Energy*, 126 F.4th at 666 (citation omitted).  The Supreme Court explained that it "ha[s] been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Murthy*, 603 U.S. at 57 (citation omitted).  "Rather than guesswork, the plaintiffs must show that the third-party . . . will likely react in predictable ways to the defendants' conduct." *Id*. at 57-58.  Specifically, the D.C. Circuit has explained:

> [S]tanding is *substantially* more difficult to establish when it depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.

- 9 -

> . . . In such cases, the plaintiff must offer *substantial* evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress. . . .
>
> \* \* \* \*
>
> When redress depends on the cooperation of a third party, it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

*Cierco v. Mnuchin*, 857 F.3d 407, 418-19 (D.C. Cir. 2017) (emphasis added). *See Hecate Energy*, 126 F.4th at 667 (explaining that plaintiff "does not show that [a favorable decision] would make it likely . . .—let alone substantially likely—that its requested relief would spur" the third party so as to redress plaintiff's injury). *See also Spectrum Five LLC v. FCC*, 758 F.3d 254, 260-61 (D.C. Cir. 2014). Plaintiff has not cleared this bar. Even if the Court requires Defendants to restore the terminated grant to the State of Texas, Plaintiff does not explain what obliges Texas to further disburse the funds to Plaintiff. Indeed, Plaintiff readily concedes all grant administration—including extensions—flowed through Texas DSHS, and that Texas DSHS ordered Plaintiff to stop immediately all activities funded by the grant. Compl. (ECF No. 1) ¶ 34, 35, 37, 52. Plaintiff alleges no facts in its Complaint that would allow the Court to draw a reasonable inference that Texas would resume processing of Plaintiff's expenses should this Court restore the grant to Texas. Because redressability is speculative at best, Plaintiff cannot establish standing, and this Court is without subject-matter jurisdiction to hear the case.

**B.    The Tucker Act Divests this Court of Jurisdiction Over Plaintiff's Claims.**

Plaintiff fails to establish this Court's jurisdiction because its claims seek to enforce contractual rights against the federal government and obtain contractual remedies for monetary relief. Those claims fall squarely within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) (granting jurisdiction to the CFC for "any claim

- 10 -

against the United States founded . . . Upon any express or implied contract with the United States[.]").  The Court of Federal Claims is, as Congress intended, the "single, uniquely qualified forum for the resolution of contractual disputes." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).  Consistent with that statutory scheme, the D.C. Circuit has "interpreted the Tucker Act . . . to 'impliedly forbid[]' contract claims against the Government from being brought in district court under . . . the APA." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618-19 (D.C. Cir. 2017); *see also Shaffer v. Veneman*, 325 F.3d 370, 373 (D.C. Cir. 2003) ("[T]his Court and others have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government, at least *vis a vis* the APA.").

Recent Supreme Court precedent confirms that the Tucker Act divests district courts of jurisdiction over APA claims that are, in substance, contractual.  In *Department of Education v. California*, 604 U.S. 650 (2025), the Court stayed a district court order granting APA relief where the plaintiffs' claims were  "in all material respects identical to the [arbitrary and capricious] one that plaintiffs press here," and contemplating that Plaintiffs' "contrary-to-statute and contrary-to-regulation claims under the APA . . . [similarly] are potentially foreclosed by *Department of Education*." *See Harris Cnty.,* 786 F. Supp. 3d at 217-18.  Specifically, in *Department of Education*, the Supreme Court observed that "the APA's [limited] waiver of sovereign immunity does not extend to 'orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here,'" so it stayed the district court order, which required the government to return to the pre-termination status quo.  *See id.* at 216 (quoting *Dep't of Education*, 604 U.S. at 650-51).

The Supreme Court recently "doubled down" on *Department of Education*.  In *NIH*, the Court stayed an injunction barring termination of various research grants, which plaintiffs likewise

- 11 -

had challenged under the APA.  145 S. Ct. at 2660.  In relevant part, the *per curium* opinion held: "[t]he [APA]'s 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction [1] to adjudicate claims 'based on' the research-related grants or [2] to order relief designed to enforce any 'obligation to pay money' pursuant to those grants."  *Id*. at 2658 (quoting *Dep't of Education*, 604 U.S. at 651).  One justice explained:  "The core of plaintiffs' suit alleges that the Government unlawfully terminated their grants.  That is a breach of contract claim . . . . [which] must be brought in the Court of Federal Claims, not federal district court."  *Id*. at 2665 (Kavanaugh, J., concurring in part and dissenting in part).

The D.C. Circuit, moreover, has instructed that, to determine whether its jurisdiction is proper, the district court should assess whether the claims "are essentially contractual." *Megapulse*, 672 F.2d at 967.  Applying the so-called *Megapulse* test to the claims at issue, the Court must consider (1) whether "the source of the rights" asserted is contractual or is "based on truly independent legal grounds" and (2) whether "the type of relief sought" is of a contractual nature.  *Id.* at 968–71.  In applying this test, the D.C. Circuit emphasized the need to look past artful pleading designed to evade the Tucker Act:  "[A] plaintiff whose claims against the United States are essentially contractual should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA."  *Id*. at 967.  *See Ingersoll-Rand*, 780 F.2d at 77-78; *Int'l Eng'g Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 580 (D.C. Cir. 1975).  In the contract context, this "preserves the sovereign's immunity from being compelled to perform obligations it prefers to breach and compensate financially . . . ."  *McKay v. United States*, 516 F. 3d 848, 851 (10th Cir. 2008).  Here, the grant agreements are contracts for Tucker Act purposes, and as explained below,

application of *Megapulse* confirms that each of Plaintiff's six claims is "essentially contractual" and therefore subject to the exclusive jurisdiction of the CFC.

          1.      <u>This Court Lacks Subject-Matter Jurisdiction Over Plaintiff's APA Claims.</u>

Plaintiff's contrary-to-statute-and-constitution claim (Count IV) is also essentially contractual and must be channeled to the Court for Federal Claims. Under *Megapulse*, the source of the rights is contractual, because the underlying appropriations statutes provide for a discretionary grant process to effectuate funding, which is the source of Plaintiff's alleged right to payments. Absent the grant agreements, Plaintiff would have no claim.

Decisions from other judges of this District specifically addressing contrary-to-statute-and-constitutional claims confirm this analysis. In *Appalachian Voices v. EPA*, for example, the Court explained why "the source of plaintiffs' rights is contractual":

> The Clean Air Act does not entitle grant funds to any particular entity "in the absence of the contract itself." *See Spectrum Leasing*, 764 F.2d at 894. Instead, it provides that EPA shall award grants to "*eligible entities . . .* as defined by the Administrator." *. . . Thus, plaintiffs' "right to . . . payments arose only upon creation and satisfaction of its contract[s] with the government; in no sense did it exist independently of [those] contract[s].*"

*Spectrum Leasing*, 764 F. 2d at 894, Civ. A. No. 25-1982, 2025 WL 2494905, at *7 (D.D.C. Aug. 29, 2025) (citation omitted) (emphasis added), *appeal filed*, No. 25-5333 (D.C. Cir. Sep. 19, 2025), *denying injunction pending appeal*, 2025 WL 2732746 (D.D.C. Sep. 25, 2025); *see also, Am. Ass'n of Physics Teachers v. Nat'l Sci. Found.*, ---F. Supp. 3d---, 2025 WL 2615054, at *11 (D.D.C. Sep. 10, 2025) ("*American Physics*") (explaining plaintiffs' "APA contrary-to-law claim . . . would fail the *Megapulse* test" because "Plaintiffs' claims to restored grant funding come from their grant awards, not from any statutory provision."); *Sustainability Inst. v. Trump*, Civ. A. No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2205) ("[L]ike the grants in [*Department of Education*],

the grants here were awarded by federal executive agencies to specific grantees from a generalized fund. While the appropriation statutes authorize the agencies to award grants, it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds.").

Under the second prong of *Megapulse*, the type of relief is contractual too, for the same reason explained above with respect to the other two APA claims. The Tucker Act therefore divests the Court of jurisdiction over this claim.

The Tucker Act likewise divests this Court of jurisdiction over Plaintiff's contrary-to-regulation claim (Count V) under the *Megapulse* test. As the D.C. Circuit has explained in performing the *Megapulse* test, "[t]hat the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action." *Ingersoll-Rand,* 780 F.2d at 78. "If the mere allegation of procurement [regulation] violations were to bring claims of this type within the jurisdiction of the district court, Congress's intent to limit contract remedies against the government to damages in the Claims Court would be effectively circumvented." *Id*. (citation omitted).

Plaintiff alleges that Defendants violated 45 C.F.R. § 75.372 when terminating the grants based on the conclusion that the "pandemic has ended." *See* Comp. (ECF No. 1) ¶ 53. Yet, Plaintiff concedes that both the terms and conditions and agreement were established directly between Plaintiff and Texas DHSS. *Id.* ¶ 34 ("Dallas County incurred expenses allowed by the terms and conditions of the grant award and contract with Texas DSHS"). The contrary-to-regulation claim therefore is not "based on truly independent legal grounds," *Megapulse*, or based "solely" on the regulations. *Ingersoll-Rand,* 780 F.2d at 78.

And under the second prong of *Megapulse*, the relief sought is contractual (specific performance), for the same reason as explained above with respect to the arbitrary and capricious claim:  Plaintiff seeks specific performance of the grant agreements, with revised terms.

This Court also lacks subject-matter jurisdiction over Plaintiff's arbitrary and capricious claim (Count VI).  This Court previously found "*Department of Education* is the case that speaks, however tersely, most directly to the issues and facts underlying [Plaintiff's] arbitrary-and-capricious APA claim."  *Harris Cnty. v. Kennedy,* 786 F. Supp. 3d 194, 219 (2025).  This Court explained that "[i]t was this [arbitrary and capricious] claim that the Supreme Court held likely belonged in the Court of Federal Claims"—"[a] claim that appears in all material respects identical to the one that [P]laintiffs press here," *id*. at 218—indeed, this Court observed no "meaningful distinction between [P]laintiffs' arbitrary-and-capricious claim and the one in *Department of Education*," *id*. at 219.  The Court concluded, "when the highest court in the land answers the same question now before this Court, in a similar preliminary posture and on facts materially identical to those in this case, this Court cannot but listen."  *Id*. at 218.

Application of the *Megapulse* test independently compels dismissal. Under the first prong, "the source of the rights" asserted by Plaintiff is the grant agreement itself.  In other words, Plaintiff's asserted right to the funds here arises solely from its grant agreement with Texas and "in no sense . . . exist[s] independently of" that contract.  *Spectrum Leasing Corp. v. U.S.*, 764 F.2d 891, 894 (D.C. Cir. 1985).   Plaintiff would have no claim absent the grant and the government's alleged breach.  *Megapulse*, 672 F.2d at 967-68.  The source of the right asserted is therefore not "truly independent" of the contract, or not "based on truly independent legal grounds." *Id*. at 970.

Under the second prong of *Megapulse,* the relief sought, at base, is payment of money.  In seeking reinstatement of awards (*i.e.,* by setting aside their grant terminations) the "essence of [Plaintiff's] claim is a request for specific performance of the original contract." *Ingersoll-Rand*, 780 F.2d at 79-80.  This is a "typical contract remedy" that indicates a claim is "founded upon a contract for purposes of the Tucker Act." *Spectrum Leasing*, 764 F.2d at 894-95.  The payment of money, far from being merely incidental to or "hint[ed] at," is the principal object of their suit. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1112 (D.C. Cir. 2022).

And *NIH* also confirms this. Plaintiff seeks adjudication of arbitrary and capricious claims that are "grants." *NIH*, 145 S. Ct. at 2658 (quoting *Dep't of Education*, 604 U.S. at 651). And further, Plaintiff seeks "relief designed to enforce [an] obligation to pay money pursuant to [that grant]." *Id*. (citation omitted).  Here, as in *NIH*, "[t]he core of [Plaintiff's complaint] alleges that the Government unlawfully terminated" a grant, so "th[is] is a breach of contract claim," that cannot be heard here. *Id*. at 2665 (Kavanaugh, J., concurring in part and dissenting in part).

Plaintiff relies on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), to argue that the APA waives sovereign immunity in a grant termination case. PI Mem (ECF No. 5-1) at 31. Indeed, *Bowen* states that "[d]amages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." 487 U.S. at 895 (citation modified).  Accordingly, *Bowen* reasoned, when money is the specific thing a plaintiff claims it is owed, rather than a mere substitute for a plaintiff's claimed loss, the plaintiff does not seek "money damages" within the APA's meaning, and the APA's sovereign immunity waiver thus applies. *Id.*

But that aspect of *Bowen* no longer is controlling in light of *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), which expressly adopted Justice Scalia's dissent

in *Bowen*. In *Bowen*, Justice Scalia argued that the majority's reason for concluding that the claims at issue did not seek money damages "is simply wrong." *Bowen*, 487 U.S. at 917 (Scalia, J., dissenting). Justice Scalia acknowledged that the claims "fit a general description of a suit for specific relief, since the award of money undoes a loss by giving respondent the very thing (money) to which it was legally entitled," but rejected the relevance of the specific versus substitute relief dichotomy on which the majority relied. *Id.* He explained that "damages" is a term of art that has "been used in the common law for centuries" and had a meaning "well established by tradition." *Id.* "Part of that tradition," Justice Scalia wrote, "was that a suit seeking to recover a past due sum of money that does no more than compensate a plaintiff's loss is a suit for damages, not specific relief." *Id.* at 918.

Justice Scalia concluded by setting forth the following rule: "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied." *Id.* at 918–19 (Scalia, J., dissenting). He identified only a single "rare" exception to this general rule, one that plainly does not encompass Plaintiff's suit here: suits "to prevent future losses that were either incalculable or would be greater than the sum awarded." *Id.* at 918.

Fourteen years later, the Supreme Court in *Knudson* directly quoted Justice Scalia's *Bowen* dissent and held that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied." *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918–19 (Scalia, J., dissenting)). That is so because "[t]he 'substance' of a money judgment is a compelled transfer of money." *Id.* at 216.

- 17 -

*Knudson* therefore limited *Bowen* to cases that are "not merely for past due sums, but for an injunction to correct the method of calculating payments going forward." 534 U.S. at 212. In other words, *Knudson* explained, the APA waived sovereign immunity in *Bowen* not because the plaintiff sought specific rather than substitute monetary relief, but because the plaintiff sought prospective injunctive relief separate and apart from the sums of money it sought to compel the government to pay. *Id.*

After *Knudson*, the test no longer is whether a plaintiff seeks specific or substitute monetary relief. Now, all that matters is whether a suit "seek[s] . . . to compel the defendant to pay a sum of money to the plaintiff." *Knudson*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)); *see also Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530–31 (D.C. Cir. 2006) (applying *Knudson* and explaining that "the rule has long been that '[a] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money[]'"). If so, the suit is for "money damages," regardless of whether the plaintiff characterizes the sum of money it seeks as specific rather than substitute relief. *Id.* In short, the Supreme Court decided *Knudson* after *Bowen*; it expressly adopted the *Bowen* dissent's position; and it distinguished *Bowen* in a manner that narrowed *Bowen* considerably. Accordingly, in *Knudson*'s aftermath, a plaintiff seeking to compel an agency to pay it a sum of money is seeking "money damages," and cannot rely on *Bowen* to overcome sovereign immunity. And were there any lingering doubt after *Knudson* that a suit seeking to compel an agency to pay a plaintiff grant funds is a suit for "money damages," the recent Supreme Court decision in *California* has now settled it conclusively. *California*, 604 U.S. at 650; *see also APHA*, 145 S. Ct. at 2660 ("The Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to

- 18 -

order relief designed to enforce any 'obligation to pay money' pursuant to those grants," citing *California*).  The Supreme Court's "command[]" is clear: when a plaintiff, like Plaintiff here, seeks to compel an agency to pay grant funds, the relief that it seeks constitutes money damages.  *APHA*, 145 S. Ct. at 2663 (Gorsuch, J., concurring in part and dissenting in part) ("Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them.").  Thus, however labeled, the claims "are essentially contractual," *Megapulse*, 672 F.2d at 967, and not subject to district court jurisdiction.

### C.  Plaintiff's Constitutional and Ultra Vires Claims Fail as a Matter of Law.

#### 1.  Plaintiffs' Constitutional Claim Fails.

Counts I and II are a mishmash of constitutional claims that "merit only brief discussion." *Amica Ctr. for Imm. Rts. v. Dep't of Just.*, Civ. A. No. 25-0298 (RDM), 2025 WL 1852762, at *17 (D.D.C. Jun. 6, 2025).  Plaintiffs allege that the grant's termination constitutes "a unilateral cancellation of Congressional appropriations by the Executive." Compl. (ECF No. 1) ¶ 72. And to Plaintiff, this violates "separation of powers" and Congress's "power of the purse." *Id.*

Plaintiff's separation of powers claim is barred at the outset because it is purely statutory. The Supreme Court has made clear that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review[.]" *Dalton v. Specter*, 511 U.S. 462, 473 (1994).  This keeps with the long tradition of "distinguish[ing] between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. at 472.  The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the executive officers rely on an unconstitutional statute.  *Id*. at 473, n.5.  Neither of those situations applies here.  "Plaintiffs, accordingly, may not circumvent the Tucker Act or the APA's reviewability bar by reframing an alleged statutory violation as a constitutional claim." *Amica*, 2025 WL 1852762, at *17; *see also Ctr. for Biological Diversity v.*

*Trump*, 453 F. Supp. 3d 11, 51–54 (D.D.C. 2020) (dismissing constitutional claims challenging border wall construction based on *Dalton*).

Contending that the challenged actions violate the separation of powers, Plaintiff advances the similar arguments the Supreme Court rejected in *Dalton*. Plaintiff's alleged separation-of-powers claims hinge entirely on whether Defendants acted in accordance with statutory obligations. *See* Compl. (ECF No. 2-1) ¶¶ 71-72. The outcome of the issues Plaintiff raises depends on resolution of contractual, or statutory at best, claims rather than any unique separation-of-powers principles. If Plaintiff's argument were accepted, then every garden-variety action by a federal agency alleged to be in violation of a contractual or statutory provision could also for the same reason be alleged to violate the constitutional separation of powers. "Under *Dalton*, [Plaintiff] cannot recast these types of claims as constitutional." *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 53; *see also Dalton*, 511 U.S. at 474 (stating that the "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established to permit this sort of evisceration.").

Count I of the Complaint fails and should be dismissed. For the same reasons, Plaintiff is unlikely to succeed on the merits of Count II and it cannot serve as a basis for a preliminary injunction.

2.    Plaintiffs' Ultra Vires Claim Fails.

Count III is an ultra vires claim alleging that the Defendants "lacked constitutional, statutory, and regulatory authority to issue or implement" the alleged policy change and resulting grant terminations. Compl. (ECF No. 1) ¶ 84. To state an ultra vires claim, the Plaintiff must point to a statutory "prohibition" that confers "rights upon the individual seeking ultra vires review." *Global Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025). Plaintiff points to no

mandatory statutory provision that has been violated, let alone to any "specific prohibition the defendants have violated to an extreme and nearly jurisdictional degree." *Id*. Plaintiff's *ultra vires* claim fails for that reason.

Plaintiff's ultra vires claims also fails because it merely restates its APA claim. "[S]uits for specific relief against officers of the sovereign" allegedly acting "beyond statutory authority or unconstitutionally" are not barred by sovereign immunity. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 693 (1949). That exception to sovereign immunity is based on the principle that such ultra vires action by a federal officer "is beyond the officer's powers and is, therefore, not the conduct of the sovereign." *Id*. at 690. Here, Plaintiff does not advance any *ultra vires* claim distinct from its APA claims. *See* Compl. (ECF No. 1) ¶¶ 86-98. Count III alleges that the Defendants "lacked constitutional, statutory, and regulatory authority" to change its priorities or to rescind the grants. *Id*. ¶ 84. This count is merely duplicative of the APA claims in Counts IV and V, which allege violations of statutory requirements under the Act. *Id*. ¶¶ 86-98. Plaintiff's ultra vires claim fails for the same reasons as do the APA claims.

## II.     Plaintiff Has Not Established Irreparable Harm.

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Even if a Plaintiff can show standing, that does not mean they have shown irreparable harm because "while standing and irreparable harm overlap, they are far from the same." *Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025). The moving party must demonstrate an injury that is "'both certain and great'" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id*. (emphasis in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 298). The injury must "be beyond remediation," meaning that where, as here, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary

- 21 -

course of litigation, weighs heavily against a claim of irreparable harm." *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2024) (citation modified).  Plaintiffs have the burden to put forth sufficient evidence to satisfy this high standard.  "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)).  In short, "irreparable harm requires not only a concrete, particularized harm, but a harm that is sufficiently serious and irremediable so as to warrant the extraordinary relief of a court's intervention in a case before factual and legal development." *Santos*, 2025 WL 1823471, at *6.

The harm that Plaintiff does allege—diminishment of funding—is not irreparable because it constitutes the very sort of economic harm that is not considered irreparable for purposes of obtaining preliminary relief: "It is well settled that economic loss does not, in and of itself, constitute irreparable harm." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (citation modified); *see also Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable.").  The essence of Plaintiff's claims is the termination of a grant.  But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a" preliminary injunction "are not enough" to show irreparable harm.  *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Plaintiff's claims of irreparable harm fall flat for several additional reasons. Plaintiff acknowledges that Texas DSHS notified it that the grant was terminated on March 25, 2025, and

- 22 -

instructed Plaintiff "to pause all activities immediately and not to accrue any additional costs as of the date of the notice." Compl. (ECF 1) ¶ 6. Yet, after receiving such notice, Plaintiff waited over eight months to bring this action without explanation. Plaintiff's delay in seeking an injunction is "inexcusable" and counsels against finding of irreparable harm. *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding a delay of forty-four days to seek an injunction "inexcusable"); *see also Indiana v. Haaland*, Civ. A. No. 24-1665 (RBW), 2024 WL 5213401, at *11 n.11 (D.D.C. Dec. 24, 2024) ("This significant delay in moving for a preliminary injunction further weighs against the plaintiffs' claims of irreparable harm because, presumably, if the harm from the Final Rule was truly irreparable, the plaintiffs would not have waited more than three months after the Final Rule went into effect to seek an injunction.") (collecting cases).

More, Plaintiff's decision to utilize the IDCU Grant to fund two permanent employment positions is odd given Plaintiff's contemporaneous understanding that, pursuant to the agreements entered into with Texas DSHS, the funds were available for only limited time. And Plaintiff's asserted reputational ham is inconsistent with its claim that the termination was not for cause. These types of facial inconsistences do not establish the type of irreparable harm sufficient to warrant a preliminary injunction in this matter.

### III.  The Balance of Equities Favors Defendants, and the Public Interest Does Not Support the Injunction

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decisively against granting a preliminary injunction in this case. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), appeal dismissed,

No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025). Granting a preliminary injunction would disrupt Defendants' administration of grants, which Plaintiff here does not challenge. The public has an interest in permitting Defendants to take decisive action when it comes to safeguarding the public fisc from wasteful spending. Entering any sort of preliminary relief would displace and frustrate the Executive's decision about how to best address that issue. *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985). Moreover, the government will likely be unable to recover the grant funds once they are disbursed because Plaintiff has not "promised to return withdrawn funds should its grant termination be reinstated." *California*, 604 U.S. at 652. As discussed above, Plaintiff will not suffer irreparable harm from the denial of its request for preliminary relief because Plaintiff has not shown that its harm could not otherwise be remediated later.

**IV.    Any Preliminary Injunction Should Be Stayed.**

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or, at a minimum, administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized.

**V.    The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary Relief.**

Defendants also respectfully request that any injunctive relief be accompanied by a bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The D.C. Circuit recently clarified that "injunction bonds are generally required." *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025), *reh'g en banc denied* (July 16, 2025). A bond is appropriate here given that the requested preliminary relief would potentially

- 24 -

require the Executive to spend money and resources that may not be recouped once distributed and employed.

## CONCLUSION

For these reasons, the Court should dismiss this action with prejudice and deny Plaintiff's Motion for Preliminary Injunction.

Dated: January 16, 2026                    Respectfully submitted,

                                           JEANINE FERRIS PIRRO
                                           United States Attorney


                                           By:        */s/ Zachary J. Krizel*
                                                  ZACHARY J. KRIZEL
                                                  Dimitar P. Georgiev, D.C. Bar #1735756
                                                  Assistant United States Attorneys
                                                  601 D Street, NW
                                                  Washington, DC 20530
                                                  202-252-2518
                                                  Zachary.Krizel@usdoj.gov

                                           *Attorneys for the United States of America*

- 25 -